The conduct of the defendant's intestate was a wanton and gross injury to the plaintiffs, who had received his son and faithfully maintained and taught him for two years. After they had incurred that expense and trouble with him, until he had, probably, learned enough to make his services of use and value, the father took him away, without finding the least fault with the plaintiffs. If any conduct can be inexcusable, it appears to me that such as that is, and that it ought to be left to the jury to give for such a breach of contract all the damages the plaintiffs really sustained: if not the full value of the boy's services for the residue of the period of apprenticeship, at all events to reimburse the plaintiffs for their expenditure of money, diet, lodging, and apparel upon him, and instruction to him. Surely, nothing less than that can be just. But I do not see any reason why the plaintiffs should not recover the value of their apprentice's labor for the unexpired term. It is opposed by the technical reason that the contract was made with the plaintiffs as partners, and that they cannot recover for the period after they ceased to be partners; and in support of the position the counsel cited Weston v. Barton, 4 Taunt., 673. But that case is really the other way. It decides that a bond given to a banking house bearing a particular name ceases to be obligatory as to transactions with the house after an old partner goes out or a new partner comes in, though the name of the firm continues the same, and the old assets and responsibilities were to be turned over to the new concern. And the reason given by Sir James Mansfield is that though it is generally (454) considered that such contracts are made with the firm as a kind of political body, yet in law they are made with the individuals composing the house. That case is an authority for the plaintiffs. The *Page 325 
truth is that the unincorporated partnerships are mere associations of individuals, and their contracts are made jointly by and to the partners as natural persons; and, hence, if a note be made payable to a firm, it is to be sued on, not in the name of the firm, but precisely as if it were payable to A., B., C., the individuals composing the firm. Therefore, this bargain was made with Joab Hiatt and William F. Jean, the plaintiffs, and not "Hiatt Jean" as an ideal being. If the latter were the case, the plaintiffs could not recover at all, any more than a corporation after the expiration of the charter. Such being the law, I am at a loss to discover why the plaintiffs may not recover the whole value of the lad's services; for, the contract being with these as natural persons, and to be so stated in pleading, those two men were just as capable of teaching the apprentice the trade of the saddler, and profiting by his labor, after they ceased to be partners as before. Suppose the one to have carried on a shop, and the other to have attended to instructing the apprentice — they would have complied as literally with their engagement as if they had continued to be partners. But why should they show any readiness in that respect? The defendant's intestate had taken away his son and broken the whole contract before they dissolved. After he did so, he had no right to insist on the plaintiffs to renew it, or to execute it especially for the residue of the term. By the waste of his time the boy's capacity for service might have been impaired; and, at all events, his obedience and submission to discipline were rendered more doubtful. Suppose the father had been sued in tort for enticing away the plaintiff's servant: can there be any doubt that the jury might give all that the plaintiffs could have been profited by the apprentice's services? In Gunter v. Astor, 4 Moore, 12, such an action was brought by a pianoforte maker, and it was proved that one of the (455) defendants had invited the plaintiff's workmen to dinner, and induced them to agree to work for the defendant at advanced wages; and, although the workmen of the plaintiff were hired, not for a term, but bythe piece, yet upon its being proved that the plaintiff's business yielded him, with those men in his employment, £ 800 a year, the jury gave £ 1,600 damages, under instruction from the judge to assess what damages the defendant's conduct occasioned the plaintiff. Upon a motion in bank for a new trial, it was refused; and the court remarked that it had been said the plaintiff only sustained damages for the value of half a day's labor of his workmen, when they visited the defendant's; but it is not for the court to ascertain the precise damages he is entitled to, and that was most properly left to the jury. So, I think that here it should be left to the jury to estimate the actual loss the plaintiffs, as natural persons, have sustained, and that if the jury should give such a sum as would tend to induce men to observe their engagements with *Page 326 
good faith, and not to violate them through mere self-will and wantonness, it would subserve the purposes of justice and morals; and the Court ought not to be disposed to disturb it. Wherefore I should think this judgment ought to be affirmed.
PER CURIAM. New trial.
Cited: Musgrove v. Kornegay, 52 N.C. 73
(456)